# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

M'MAH SYLLA,

                Plaintiff,

v.

MAMOUDOU CONDE, individually and as a
corporate agent,
AICHA CONDE, individually and as a
corporate agent,
SIREBEH CONDE, individually and as a
corporate agent,
NIMBAYA! THE WOMEN'S DRUM & DANCE
COMPANY OF GUINEA, a South Carolina company,
WORLD MUSIC PRODUCTIONS, INC.,
a South Carolina corporation,
and COLUMBIA TIRE, INC. a/k/a
COLUMBIA TIRE, LLC a/k/a
ROLLING TIRES AUTO SERVICE CENTER, a
South Carolina corporation,

                Defendants.

Case No.    3:14-cv-03681-JFA
Hon.

---

Nakisha N. Chaney (P65066) (*to seek pro hac vice admission*)
NACHT, ROUMEL, SALVATORE,
BLANCHARD & WALKER, P.C.
Attorney for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, Michigan 48104
(734) 663-7550
*nchaney@nachtlaw.com*

Scott N. Schools (Federal ID No. 4985)
MOORE & VAN ALLEN
Attorney for Plaintiff
8 Wentworth Street
(843) 579-7031
Charleston, SC 29401
*scottschools@mvalaw.com*

---

## COMPLAINT AND JURY DEMAND

Plaintiff brings this action against Defendants MAMOUDOU CONDE; AICHA CONDE; SIREBEH CONDE; NIMBAYA!; WORLD MUSIC PRODUCTIONS, INC.; and COLUMBIA TIRE, INC. a/k/a ROLLING TIRES AUTO SERVICE CENTER.

## INTRODUCTION

1.    From February through September 2012, Defendants trafficked Plaintiff into and throughout the United States by means of, among other things, fraud, psychological coercion, and physical confinement.

2.    To further facilitate control over Plaintiff, Defendants withheld Plaintiff's passport, failed to pay Plaintiff's wages, and maintained Plaintiff in an impoverished and malnourished condition.  Fearing a forced abortion, Plaintiff eventually escaped through a hidden hole in the fence surrounding the home within which she was confined.

3.    Defendants' misconduct caused, and continues to cause, Plaintiff great harm. Plaintiff now seeks redress under the Trafficking Victims Protection Reauthorization Act (hereinafter "TVPRA"), 18 U.S.C. §§ 1584, 1589, 1590, 1593 and 1595; the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. §§ 215-16, and South Carolina's wage, contract and tort laws.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337, 28 U.S.C. § 1367, 18 U.S.C. § 1595, 18 U.S.C. § 1596, and 29 U.S.C. § 216(b) (FLSA).

5.    Venue properly lies in this Court pursuant to 28 U.S.C. § 1391.

## THE PARTIES

6.    Plaintiff is a young Guinean woman who was trafficked for labor into and throughout the United States by Defendants.  Born in Conakry, Guinea, Plaintiff and her family

were poor.  Plaintiff never went to school and thus she does not know how to read or write, and she does not speak English well.

7.    Defendant Mamoudou Conde ("Conde") is an individual who, upon information and belief, resides in Columbia, South Carolina, and is the Founding Director, Artistic Director and Manager of Defendant Nimbaya! The Women's Drum & Dance Company of Guinea ("Nimbaya"), the President of Defendant World Music Productions, Inc. ("WMPI"), and the owner and registered agent for Defendant Columbia Tire, LLC a/k/a Columbia Tire, Inc. a/k/a Rolling Tires Auto Service Center ("Columbia Tire").

8.    Defendants Aicha and Sirebeh Conde, Defendant Conde's sisters, worked in concert with Defendant Conde to traffic Plaintiff.  Upon information and belief, Defendants Aicha and Sirebeh Conde reside in the United States.

9.    Defendant Nimbaya is a Columbia, South Carolina-based touring drum and dance performance company owned and controlled by Defendant Conde, individually and through his company, Defendant WMPI.  Nimbaya's female members perform using various instruments, including the djembe – a traditional West African drum.  Upon information and belief, Nimbaya has performed throughout the United States and internationally for more than ten years.

10.    Defendant WMPI is a Columbia, South Carolina-based company owned and controlled by Defendant Conde.

11.    Defendant Columbia Tire, also known as Rolling Tires Auto Service Center, is located in Columbia, South Carolina.  In 2013, Columbia Tire, Inc. became Columbia Tire, LLC.

3

## GENERAL ALLEGATIONS

**Nimbaya Markets Itself as a Supporter of Female Empowerment**

12.    Nimbaya is a dance and drumming company that holds itself out as a means through which impoverished and marginalized women in Guinea can empower themselves.

13.    Upon information and belief, Conde chooses women who are in especially vulnerable situations to become members of Nimbaya.

14.    According to its marketing materials, multiple organizations have sponsored Nimbaya, including the South Carolina Arts Commission, the Global Education Center, and the National Endowment for the Arts.

15.    Nimbaya performs nationally and internationally and, according to Nimbaya's marketing materials, its founder, Defendant Conde, has been the recipient of numerous awards and honors, including from the cities of San Francisco and Los Angeles.

16.    Nimbaya appears to have successfully marketed itself as a cultural phenomenon that embraces female empowerment.

17.    Nimbaya's practices are not consistent with its image.

**Defendants Trafficked Plaintiff Into and Throughout the United States**

18.    In early 2012, Defendants, working together for their individual and collective benefit, recruited Plaintiff under false pretenses to leave Guinea and come to the United States to perform for Nimbaya.

19.    While in Guinea, Defendants Aicha and Serebeh Conde told Plaintiff that she would receive $300 per week plus $20 per day while Plaintiff was in the United States.  When Aicha and Serebeh Conde made this statement, Defendant Conde was present by speakerphone.

4

Defendant Conde also promised Plaintiff that, among other things, she would be housed in California and the group members would be well fed.

20.     Prior to leaving Guinea, Conde made Plaintiff sign a contract identifying a family member who would be responsible if she ran off while in the United States.

21.     Plaintiff identified her brother-in-law, F.S., as the responsible family member.

22.     In early February 2012, Plaintiff and other group members (seven other women and one man) flew from Conakry, Guinea to the United States. Once the group was through immigration, Defendant Aicha Conde took all passports and other travel documents from the group members, including Plaintiff, and did not give them back.

23.     During her time with Defendants, Plaintiff requested the return of her passport. Defendants Aicha and Sirebeh Conde responded that Conde ordered them to hold the passports and they were following that order.  Defendants also told Plaintiff that they brought Plaintiff and the other group members to the United States so the passports belonged to Defendants.

**Defendants Deny Plaintiff Freedom of Movement, Sufficient Nutrition and Health Care**

24.     Once in the United States, and when the group was not touring, Defendant Conde housed Plaintiff with other Nimbaya members in a gated residence with a locked fence in Columbia, South Carolina.

25.     Group members were confined to the residence. Conde required that all members stay within the premises when he was not present and forbade them to develop outside friendships and relationships.

26.     When Plaintiff and others asked Defendant Conde to open the gate, they were told in the same or substantially similar words that "this is the United States, and the police will arrest you and take you somewhere where you don't see your people and you might end up dying."

They were also told in the same or substantially similar words that Americans are "no good to you," that "America is a very dangerous place and full of crime," and that "if they left the home they may be kidnapped or murdered."  Plaintiff believed Conde.

27.    Plaintiff was largely dependent on Conde for necessities.

28.    Conde allocated monthly supplies that were inadequate to sustain the group members. These provisions consisted of one loaf of bread and one carton of eggs for each member of the group. A little rice, sauce and meat (which was sometimes expired) were sometimes available for the group members to share.

29.    The group often went without basic household items such as toilet paper.

30.    While with the group, Plaintiff suffered from bone pains. She also felt light-headed and suffered chest pains.

31.    Defendant Conde refused to provide medical care to group members (except his sisters) when they fell ill.

32.    Plaintiff feared asking for medical care because other members of the group suffered from more severe conditions and were denied medical assistance, and she was worried that she would anger Conde.

**Defendants Physically Confined and Psychologically Coerced Plaintiff**

33.    Despite the abhorrent conditions, Plaintiff was compelled to remain with Conde.

34.    Plaintiff feared that Conde would retaliate against her family in Guinea if she did not obey his directions.  More specifically, Plaintiff feared that Conde would pay the military police to arrest or otherwise harm her family members, including F.S., who was identified as the responsible family member.

35.    Plaintiff had reason to fear that the Guinean military might harm her family because when she was in Guinea she witnessed soldiers beating people on the street.  She also saw soldiers burn a body when she was a child.  Plaintiff believed that the police would arrest anyone if they were paid to do so.

36.    Plaintiff also believed that Conde might physically harm her if she tried to escape.

37.    While Plaintiff was housed at the Columbia residence, she saw Conde beat one of the Nimbaya group members with an electrical wire for trying to help another member who did not know how to read.

38.    Conde also beat another member of the group, his girlfriend, resulting in bruises and swelling to her face.

**Plaintiff is Compelled to Labor for Nimbaya and Columbia Tire**

39.    Conde exploited Plaintiff's unfamiliarity with the United States and its laws and culture; her inability to speak, read and write English; her fear of him and his ability to harm her family in Guinea; her lack of financial resources; and her fear of U.S. authorities to control Plaintiff and compel her services to Nimbaya and to labor at Columbia Tire.

40.    Throughout 2012, Plaintiff performed and taught workshops for Nimbaya at various locations within the United States, including at Harvard University, and in Washington, D.C., New York City, and South Carolina.  Plaintiff was also forced to perform for the owner of the South Carolina home at which she was compelled to stay.

41.    Defendants also transported Plaintiff outside of the United States to perform for Nimbaya.

42.    In July 2012, Nimbaya travelled to Montreal in Quebec, Canada, to perform.  Conde gave all passports to the customs' officials and, once they passed through, he collected the

passports from the officials.  The passports were not given to Plaintiff or the other Nimbaya members.

43.    When the group re-entered the United States, Conde again presented the passports to, and took them back from, border patrol officials.

44.    Defendants benefitted and received value, including money and publicity, from the Nimbaya performances, workshops and merchandise.

45.    Plaintiff was not paid her promised wages for her work with Nimbaya.

46.    On one occasion Plaintiff begged Defendants Aicha and Sirebeh Conde for her wages because she needed to buy necessities and had no money.  Defendants gave her $50, but they told her that she had to pay it back.

47.    Conde made various excuses for not paying Plaintiff all of the wages that she was owed, including telling Plaintiff that he was holding money for the group and that he had given Plaintiff's wages to a male member of the group to hold for her.

48.    Plaintiff did not authorize Conde to give her money to any other group member, and the male member denied that Conde gave him Plaintiff's money.

49.    After the group returned from Canada, Conde made Plaintiff and other members of Nimbaya work for Defendant Columbia Tire.  Plaintiff and the other workers had to sort shipments of 1000-2000 tires.  The group worked Monday through Friday, performing hard manual labor for shifts of 10 or 11 hours each day.

50.    Conde sometimes gave group members $5.00 if he felt that they worked hard that day.

51.    Conde never paid Plaintiff wages or overtime for her work at the tire shop.

**Fearing a Forced Abortion, Plaintiff Escaped Conde's Control**

52.     While staying at the Columbia residence and facing constant malnourishment, Plaintiff sometimes sneaked away through a hidden hole in the fence to purchase food with what little money she was provided.

53.     Plaintiff always returned to the home after sneaking off to get food because she did not have anywhere else to go, she feared the police because of Conde's warnings that they would harm Plaintiff, and she was afraid that Conde would harm her family in Guinea if she did not return.

54.     During these excursions from the home, Plaintiff met a man with whom she formed a relationship, in part because she was hungry and he would buy food for her. During the summer of 2012, Plaintiff became pregnant.

55.     Plaintiff kept the pregnancy secret from Conde because she feared that Conde would force her to have an abortion if he found out.

56.     Eventually, other members of the group suspected that Plaintiff was pregnant.

57.     Defendant Aicha Conde approached Plaintiff and asked whether Plaintiff had become pregnant. Plaintiff told her that she was not pregnant. Aicha Conde replied, "Well we're going to tell my brother [Defendant Conde] and take you to the hospital, and we will find out."

58.     Fearing that Conde would force Plaintiff to abort her child, Plaintiff escaped with two other Nimbaya members through the hole in the fence and fled the premises.

59.     After Plaintiff escaped from the Columbia residence, Plaintiff discovered through correspondence with her family that Conde attempted to have Plaintiff's brother-in-law arrested because she left Conde.

60.     An arrest warrant was issued for Plaintiff's brother-in-law in Guinea, and he fled after hearing that the responsible family members of other escaped Nimbaya group members had been arrested.

**Conde Tries to Force Plaintiff to Come Back**

61.     Since Plaintiff's escape, Conde has tried to find Plaintiff and force her to return to him, including by sending his daughter to the city in which Plaintiff lives to track her down.

62.     In addition, the person with whom Plaintiff resided after fleeing South Carolina received harassing phone calls, including one demanding, "We want the dancers back and will be up there in two and a half hours."  The matter was reported to the police for investigation.

**Plaintiff Has Been Harmed**

63.     As a result of Defendants' conduct, Plaintiff has suffered severe emotional distress.

64.     Among other things, Plaintiff has trouble sleeping at night and suffers nightmares.

65.     Plaintiff is also afraid to return to Guinea and fears that Conde will use the military police to retaliate against her if she returns.

**CLAIMS FOR RELIEF**

**COUNT I**
**Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA")**
**Forced Labor, 18 U.S.C. §§ 1589, 1595**
(*against all Defendants*)

66.     Plaintiff brings this claim pursuant to 18 U.S.C. §§ 1589 and 1595.

67.     Plaintiff incorporates here all previously stated allegations.

68.     Defendants knowingly obtained Plaintiff's labor and services by means of, among other things, physical confinement, threatened harm to others, and a scheme intended to cause

Plaintiff to believe that if Plaintiff did not perform such labor she or another person would suffer serious harm.

69.     Defendants knowingly benefitted and received value from participation in a venture, knowing and in reckless disregard of the fact that the venture engaged in forced labor in violation of 18 U.S.C. § 1589.

70.     Plaintiff suffered and continues to suffer significant harm as a result of Defendants' wrongful conduct.

**COUNT II**
**TVPRA of 2008**
**<u>Involuntary Servitude, 18 U.S.C. §§ 1584, 1595</u>**
(*against all Defendants*)

71.     Plaintiff brings this claim pursuant to 18 U.S.C. §§ 1584 and 1595.

72.     Plaintiff incorporates here all previously stated allegations.

73.     Defendants knowingly and willfully brought Plaintiff into the United States for the purpose of holding her in involuntary servitude.

74.     Defendants in fact held Plaintiff in involuntary servitude while she was in the United States.

75.     Defendants compelled Plaintiff's services through means including psychological coercion and threatened harm to others.

76.     Plaintiff believed that she had no means to resist Defendants' compulsion of labor without harm to herself or others.

77.     Plaintiff suffered and continues to suffer significant harm as a result of Defendants' misconduct.

## COUNT III
### TVPRA of 2008
### Trafficking in Involuntary Servitude and Forced Labor
### 18 U.S.C. §§ 1584, 1589, 1590, 1595
### (*against all Defendants*)

78.    Plaintiff brings this claim against Defendants under 18 U.S.C. §§ 1584, 1589, 1590 and 1595 of the Trafficking Victims Protection Reauthorization Act.

79.    Plaintiff incorporates here all previously stated allegations.

80.    Defendants knowingly recruited, harbored, and transported Plaintiff into, within, and out of the United States for the purpose of subjecting her to involuntary servitude and forced labor in violation of 18 U.S.C. §1590.

81.    Defendants knowingly benefitted and received value from participation in a venture that Defendants knew or should have known engaged in trafficking in involuntary servitude and forced labor within the meaning of 18 U.S.C. § 1595.

82.    Plaintiff suffered and continues to suffer significant harm as a result of Defendants' misconduct.

## COUNT IV
### Fair Labor Standards Act ("FLSA")
### 29 U.S.C. §206(a)
### (*against Defendants Conde, Nimbaya, WMPI and Columbia Tire*)

83.    Plaintiff brings this claim against Defendants for violations of minimum wage and overtime provisions of the Fair Labor Standards Act.

84.    Plaintiff incorporates here all previously stated allegations.

85.    Plaintiff was an "employee" within the meaning of 29 U.S.C. § 203.

86.    Defendants Conde, WMPI, Nimbaya and Columbia Tire were "employers" within the meaning of 29 U.S.C. § 203.

87.    Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. §206(a), by failing to pay the Plaintiff at least $7.25 for every compensable hour of labor performed during each week she was employed by Defendants.

88.    The violations resulted from the unlawful withholding of the vast majority of wages due to Plaintiff for services rendered.

89.    Defendants also failed to pay Plaintiff overtime wages as required by the Fair Labor Standards Act, 29 U.S.C. §207(a), for the period she was employed by Defendants, despite the fact that Plaintiff was often employed in excess of forty hours in a workweek.

90.    These violations of the FLSA were willful, within the meaning of the Fair Labor Standards Act. Defendants knew that Plaintiff was not being paid properly because of her repeated inquiries about her unpaid wages. Despite Plaintiff's protestations, Defendants continued the practice of withholding Plaintiff's wages.

91.    As a consequence of Defendants' violations of the Fair Labor Standards Act, Plaintiff is entitled to recover the minimum and overtime wages due to her plus an additional equal amount in liquidated damages pursuant to 29 U.S.C. §216(b).

## COUNT V
## VIOLATION OF SOUTH CAROLINA WAGE LAWS
### S.C. CODE §§ 41-10-40, 41-10-80
**(*against Defendants Conde, WMPI, Nimbaya! and Columbia Tire*)**

92.    Plaintiff incorporates here all previously stated allegations.

93.    Defendants Conde, WMPI, Nimbaya and Columbia Tire were "employers" within the meaning of S.C. Code § 41-10-10.

94.    Defendants failed to pay Plaintiff all wages due, and unlawfully withheld and diverted Plaintiff's wages in violation of S.C. Code § 41-10-40.

13

95.    Plaintiff suffered and continues to suffer harm as a result of Defendants' misconduct.

**COUNT VI**
**BREACH OF CONTRACT**
*(against the Individual Defendants, Nimbaya and WMPI)*

96.    Plaintiff incorporates here all previously stated allegations.

97.    Plaintiff and Defendants agreed that Plaintiff would provide services for Nimbaya in exchange for, among other things, $300 per week plus $20 per day.

98.    Plaintiff provided services for Nimbaya.

99.    Defendants did not pay Plaintiff as promised and otherwise failed to perform his agreed-upon obligations.

100.    Plaintiff suffered and continues to suffer harm as a result of Defendants' breach of contract.

**COUNT VII**
**PROMISSORY ESTOPPEL**
*(against the Individual Defendants, Nimbaya and WMPI)*

101.    Plaintiff incorporates here all previously stated allegations.

102.    Defendants promised Plaintiff that she would be paid $300 per week, plus $20 per day for services that she performed for Nimbaya.

103.    Defendants made this promise with the intent that Plaintiff rely upon it, which she in fact did to her detriment.

104.    Defendants did not pay Plaintiff as promised though they benefitted from her services.

105.    A refusal to enforce Defendants' promise would unjustly sanction a fraudulent scheme and result in other injustices.

## COUNT VIII
## FRAUDULENT MISREPRESENTATION
### (*against the Individual Defendants, Nimbaya and WMPI*)

106.    Plaintiff incorporates here all previously stated allegations.

107.    The individual Defendants knowingly made false, material representations regarding the conditions under which Plaintiff would be employed and housed with the intent that Plaintiff rely upon those representations.

108.    Plaintiff, unaware of the falsity of the statements, relied upon them to her injury.

## COUNT IX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (*against the Individual Defendants*)

109.    Plaintiff incorporates here all previously stated allegations.

110.    Defendants intentionally or recklessly inflicted severe emotional distress and were certain or substantially certain that such distress would result from their conduct.

111.    Defendants' conduct was extreme and outrageous and exceeded all possible bounds of decency.

112.    Defendants' conduct is intolerable in any civilized community and it has caused, and continues to cause, Plaintiff severe emotional distress.

## COUNT X
## CONVERSION
### (*against the Individual Defendants*)

113.    Plaintiff incorporates here all previously stated allegations.

114.    Plaintiff had an ownership interest in her visa and passport.

115.    Defendants Conde, Aicha Conde and Sirebeh Conde assumed and retained possession, control and authority over Plaintiff's visa and passport without her authority or acquiescence.

15

116.    Plaintiff was dispossessed of her property to her detriment, including but not limited to interference with her freedom of movement.


## **PRAYER FOR RELIEF**

WHEREFORE**,** Plaintiff prays that this Court will enter an order awarding Plaintiff:

a.   economic damages, including unpaid wages;

b.   noneconomic damages for the fear, psychological abuse, severe emotional distress and other harm she suffered;

c.   liquidated and punitive damages as permitted by law;

d.   costs and attorney fees incurred in seeking redress;

e.   return of all property, including Plaintiff's passport and other travel/identification documents;

f.   all restitution permitted under 18 U.S.C. § 1593, and damages under 18 U.S.C. § 1595(a); and

g.   all relief that this Court deems just and equitable.


Respectfully submitted,


Dated: September 15, 2014                    /s/ ___Scott N. Schools_____
                                             Scott N. Schools (Federal ID No. 4985)
                                             MOORE & VAN ALLEN
                                             Attorney for Plaintiff
                                             78 Wentworth Street
                                             Charleston, SC 29401
                                             *scottschools@mvalaw.com*

                                             Nakisha Chaney (P65066)
                                             ***to seek pro hac vice admission***
                                             Attorney for Plaintiff
                                             101 N. Main Street, Suite 555
                                             Ann Arbor, Michigan 48104
                                             *nchaney@nachtlaw.com*

16

## JURY DEMAND

Plaintiff demands a trial by jury in the above-captioned matter.

Respectfully submitted,

Dated: September 18, 2014

/s/ ____Scott N. Schools_____
Scott N. Schools (Federal ID No. 4985)
MOORE & VAN ALLEN
Attorney for Plaintiff
78 Wentworth Street
Charleston, SC 29401
*scottschools@mvalaw.com*

Nakisha Chaney (P65066)
***to seek pro hac vice admission***
Attorney for Plaintiff
101 N. Main Street, Suite 555
Ann Arbor, Michigan 48104
*nchaney@nachtlaw.com*