# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

M'MAH SYLLA,

    Plaintiff,        C.A. No. 14-cv-3681-JFA

v.

                 **MEMORANDUM IN SUPPORT**
MAMOUDOU CONDE, individually and as a **OF MOTION TO DISMISS**
corporate agent,           **AMENDED COUNTERCLAIMS**
AICHA CONDE, individually and as a   [Fed. R. Civ. P. 12(b)(6)]
corporate agent,
SIREBEH CONDE, individually and as a
corporate agent,
NIMBAYA! THE WOMEN'S DRUM & DANCE
COMPANY OF GUINEA, a South Carolina company,
WORLD MUSIC PRODUCTIONS, INC.,
a South Carolina corporation,
and COLUMBIA TIRE, INC. a/k/a
COLUMBIA TIRE, LLC a/k/a
ROLLING TIRES AUTO SERVICE CENTER, a
South Carolina corporation,

      Defendants.

---

    Plaintiff M'Mah Sylla brought an action against Defendants for human trafficking in forced labor and involuntary servitude, violation of federal and state wage and hour laws, and various contract and tort claims. (Ex. A, Complaint - Dckt No. 1). These claims arise from Defendants' fraudulent recruitment of Plaintiff into a labor trafficking scheme from which Defendants financially benefitted.

    In response, Defendants plead conclusory counterclaims for defamation, breach of contract and intentional infliction of emotional distress. The claims lack sufficient factual development to establish their plausibility. Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement'''), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Ms. Sylla therefore moves the Court to dismiss the claims under Fed. R. Civ. P. 12(b)(6).

## I. STATEMENT OF FACTS

Ms. Sylla is a young Guinean woman whom Defendants trafficked by means of fraud, psychological coercion and physical confinement into, out of and throughout the United States. (Ex. A, Dckt No. 1 - Complaint, ¶ 1). In early 2012, Defendants recruited Ms. Sylla under false pretenses to travel to the United States to perform for Defendant Nimbaya, a touring dance and drum performance group. (*Id*. at ¶¶ 12, 15, 18).

In early February 2012, having been falsely promised compensation and other benefits in exchange for performing with Nimbaya, Ms. Sylla traveled with Nimbaya to the United States. (*Id*. at ¶¶ 19, 22). Upon clearing immigration, Defendant Aicha Conde confiscated the performers' passports and travel documents. (*Id*. at ¶ 22). Once in the United States, Ms. Sylla performed for Nimbaya at various venues in the United States and Canada. (*Id*. at ¶¶ 40-42). At no time was Ms. Sylla permitted to hold her own travel papers. (*Id*. at ¶¶ 22-23).

Although Defendants benefitted from Ms. Sylla's services, she was not paid as promised. (Ex. A., Dckt No. 1 at ¶¶ 44-45). Further, when Ms. Sylla was not performing, she was confined to a South Carolina home with a locked gate. (*Id*. at ¶24). Defendant Mamoudou Conde also made Ms. Sylla and others work long days at his auto service shop, Defendant Columbia Tire. (*Id*. a ¶ 49). Conde did not pay Ms. Sylla wages or overtime for her work at the shop. (*Id*. at ¶51).

Defendants compelled Ms. Sylla's labor through, among other means, fear, confinement and wage deprivation. (*Id*. at ¶¶24, 44-45, 49). Defendant Conde fostered fear of American authorities, warning Ms. Sylla that the police would arrest her, take her away, and take her where she may not see her people, and that she may end up dying. (*Id*. at ¶ 26). Defendant Conde also

2

told Ms. Sylla that America is a dangerous place that is full of crime and that if Ms. Sylla left the home she might be harmed. (*Id*. at ¶26). Ms. Sylla had to identify a family member in Guinea who would be responsible if she left Conde in the United States, and Ms. Sylla, aware of police practices within Guinea and Conde's influence, feared that her responsible family member would be harmed if she escaped. (*Id*. at ¶¶ 20, 53).

Ms. Sylla was largely dependent on Defendant Mamoudou Conde for necessities, including food. (*Id*. at ¶¶ 25, 28). Conde allocated to the group inadequate monthly rations that left group members hungry. (*Id*. at ¶ 28). Compelled by hunger and the desire to obtain food, Ms. Sylla and others would sneak away from the residence through a hidden hole in the fence. (*Id*. at ¶ 52). However, Ms. Sylla always returned to the South Carolina residence because she feared that police would harm her, she was afraid that her responsible family member would be harmed if she did not return, and she had nowhere else to go. (*Id*. at ¶53).

During her outings to get food, Ms. Sylla met a man who would buy food for her. (*Id*. at ¶ 54). She formed a relationship with him and, in the summer of 2012, Ms. Sylla became pregnant. (*Id*.) Ms. Sylla hid the pregnancy because she feared that Defendant Conde would force her to abort the child. (*Id*. at ¶ 55). However, Defendant Aicha Conde became suspicious that Ms. Sylla was pregnant and said that she would tell her brother, Mamoudou Conde. (*Id*. at ¶ 57). Fearing that Mamoudou Conde would force her to abort the child, Ms. Sylla fled the premises through the hole in the fence. (*Id*. at ¶ 58). Ms. Sylla later learned that Mamoudou Conde attempted to have her brother-in-law (Ms. Sylla's responsible family member) arrested. (*Id*. at ¶ 59). Since Ms. Sylla escaped, Mamoudou Conde has tried to locate her and force her return to Nimbaya. (*Id*. at ¶61).

CHARLESTON\596673v2

On September 18, 2014, Ms. Sylla filed a complaint for human trafficking and violation of related state and federal laws. (Ex. A, Dckt No. 1). On January 23, 2015, Defendants asserted counterclaims for defamation, breach of contract and intentional infliction of emotional distress. (Ex. B., Dckt No. 48 at ¶¶ 56, *et seq*.). Ms. Sylla now moves the Court to dismiss these claims.

## II. ARGUMENT

Defendants' counterclaims should be dismissed for failure to plead facts establishing the plausibility of their claims. To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. If a complainant fails to state claims that cross "the line from conceivable to plausible," the claims will not survive. *Id*. at 678-79. Here, Defendants do not plead sufficient facts to establish the plausibility of the claims they assert.

### A.    Defendants Fail to State a Claim for Defamation

Defendants assert a defamation claim. (Ex. B at ¶¶ 56-67). A material element of any defamation claim is the "unprivileged publication" of a false statement to a third party. *Fountain v. First Reliance Bank*, 730 S.E.2d 305, 309 (S.C. 2012). With regard to this element, Defendants simply allege, "Plaintiff's comment and statements regarding Mamoudou Conde, Aicha Conde, Sirebeh Conde and Nimbaya! were unprivileged . . ." (Ex. B at ¶ 64). Defendants' conclusory allegation that the communication was unprivileged does not suffice. As observed by the U.S. Supreme Court, "[a] complaint will not suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 556 U.S. at 678. Defendants must allege sufficient facts to plausibly support *each* element of the claim. *Jaros v. Ill. Dep't of Corr.,* 684 F.3d 667, 672

(7th Cir. 2012) (Plaintiff "must plead facts which plausibly (even if improbably) support each element of his claim.").[1] Defendants do not meet this standard. They offer no factual allegations from which the court or a jury could infer that Plaintiff's alleged communications were unprivileged – a material element of defamation. (Ex. B at ¶¶ 62, 64, 75). As such, Defendants fail to state a plausible claim.[2] *See Sellers v. S.C. Autism Soc'y, Inc.*, No. 3:11-2163, 2012 U.S. Dist. LEXIS 39128, *19 (D.S.C. Feb. 22, 2012), (finding that Plaintiff failed to state a claim for defamation when Plaintiff failed to plead, among other things, "why the statement(s) were not privileged."), adopted in 861 F. Supp. 2d 692, 699 (D.S.C. 2012), Ex. C.

Defendants' defamation claim also should be dismissed because Defendants do not provide sufficient notice of the communication complained of to enable Ms. Sylla to defend herself. "To sufficiently plead a defamation claim, plaintiff must set forth in her complaint the allegedly defamatory words, the communicator of those words, the persons to whom those words were published and the time and place of publication." *Heckman v. Zurich Holding Company of America*, No. 06-2435, 2007 U.S. Dist. LEXIS 14720, *18 (D. Kan. Feb. 28, 2007), Ex. D. *See also Caudle v. Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1996) ("In order to plead defamation, a

---

[1] *See also Willingham v. Graham Correctional Center,* No. 14-cv-00912, 2014 U.S. Dist. LEXIS 129296, *8 (S.D. Ill. September 16, 2014) ("In order to satisfy the pleading standards for these claims, Plaintiff is required to plead facts that "plausibly (even if improbably) support each element of his claim."), Ex. I; *Addington v. Bank of America, N.A.*, No. 3:12-cv-00548, 2013 U.S. Dist. LEXIS 157116, *4 (D. Nev. October 31, 2013) (observing that Rule 8 does not empower Plaintiffs to plead the bare elements and cautioning that "Plaintiffs must still allege plausible facts to support each element of their fraud claim."), Ex. J**;** *Brown v. Cox*, No. 2:11cv184, 2011 U.S. Dist. LEXIS 82743, *6 (E.D. Va. July 27, 2011) ("To successfully plead a claim under *Iqbal* and *Twombly*, Plaintiff's Complaint must provide sufficient facts to plausibly support each of these elements of the tort."), Ex. K**.**

[2] To the extent that Defendants' claim is based on statements that Ms. Sylla made in her pleadings or in relation to the litigation, such statements are absolutely privileged and are not actionable defamation. *See Pond Place Partners, Inc. v. Poole*, 567 S.E.2d 881, 893 (S.C. Ct. App. 2002) ("[A]bsolute privilege exists as to any utterance arising out of the judicial proceeding and having any reasonable relation to it, including preliminary steps leading to judicial action of any official nature provided those steps bear reasonable relationship to it.").

plaintiff should allege specific defamatory comments . . . by pleading the time, place, content, speaker, and listener of the alleged defamatory matter.").[3]

Here, Defendants pleaded:

Plaintiff intentionally, maliciously and recklessly published written and/or verbal communications to various third parties, falsely and maliciously accusing Defendants Mamoudou Conde, Aicha Conde, Sirebeh Conde and Nimbaya! of criminal acts re: human trafficking.

(Ex. B at ¶ 62). Later in their response, in support of a separate claim, Defendants further allege:

Plaintiff has accused the Defendants Mamoudou Conde, Aicha Conde, Sirebeh Conde and Nimbaya! of being a [sic] Human Traffickers and communicated same to others who work with and are associated with Defendants.

(*Id*. at ¶75).

In so pleading, Defendants do not plead any facts with regard to when or where the alleged defamatory communications were made, nor do they plead with any definiteness the manner of communication. *Weisshaus v. Fagan*, No. 08 Civ 4053, 2010 U.S. Dist. LEXIS 70918, *16 (S.D.N.Y. July 15, 2010) (finding lack of notice where "[Defendant's] counterclaim does not allege the time, place, or manner in which [Plaintiff] made the alleged injurious statements . . ."), Ex. M. Significantly, Defendants' failure to state when the alleged defamatory statements were made make it impossible to ascertain whether the claim falls within South Carolina's two-year statute of limitations. S.C. Code Ann. § 15-3-550(a).

Furthermore, Defendants' allegations that Plaintiff published defamatory statements to "various third parties" and "to others who work with and are associated with Defendants" lack sufficient specificity. While it has been held that a claimant does not have to plead the specific

---

[3] *See also Ahmed v. Gelfand*, 160 F. Supp. 2d 408, 416 (E.D.N.Y. 2001) (holding defamation allegations to be insufficient because Plaintiff did not plead when the statements were made or to whom they were made); *Decker v. Vermont Educational Television, Inc*. 13 F. Supp. 2d 569, 573 (D. Vt. 1998) (observing that sufficient notice of an alleged defamatory communication requires an indication of when it was made and to whom it was communicated).

CHARLESTON\596673v2

name of the person to whom the communication was published, Defendants at a minimum must plead a "discrete" or "finite" group of identifiable individuals to whom the statement was made. *See, e.g., Johnson v. Duke Energy Corp*., No. 0:13-2967, 2014 U.S. Dist. LEXIS 73139, *4-5 (D.S.C. May 29, 2014), Ex. E**.** Pleading indefinite categories of unidentifiable persons do not suffice to state a claim. *See, e.g., Sellers*, 2012 U.S. Dist. LEXIS 39128 at *17-19, adopted at 861 F. Supp. at 699 (finding alleged publication to "potential employers and others in the federal contracting community" insufficient); *Decker*, 13 F. Supp. 2d at 573-574 (finding alleged publication to "others" insufficient); *Tracfone Wirelines, Inc. v. Carson*, No. 3:07-CF-1761, 2008 U.S. Dist. LEXIS 68673, *25-26 (N.D. Tex. Aug. 28, 2008) (finding alleged publication to "retailors" insufficient to state a claim), Ex. F.

Here, Defendants' allegation that Plaintiff published communications to "various third parties" is analogous to an allegation that Plaintiff published the communication to the general public. It does not suffice to establish defamation. *Campbell v. Int'l Paper Co*., No. 3:12-cv-03042, 2013 U.S. Dist. LEXIS 63393, *11 (D.S.C. May 3, 2013), Ex. L. Defendants' allegation that Plaintiff published communications to persons who "work with or are associated with Defendants" is likewise impermissibly vague. According these phrases their broad meanings, Defendants have booked and performed – and thus have "worked with" or "associated" – with people in various countries around the world. (Ex. B ¶¶ 69-72). Defendants' pleading of publication to such persons by category neither affords Plaintiff notice of whom Defendants are talking about, nor does it plead a discrete or finite category of identifiable persons to whom the communications were published. This deficiency and the resulting lack of notice is compounded by the fact that Defendants also do not plead the time, place and manner of the alleged defamatory statements. Defendants simply fail to plead "factual content that allows the court to

CHARLESTON\596673v2

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*

550 U.S. at 570. The claim should be dismissed.

### B.    Defendants Do Not State a Claim for Intentional Infliction of Emotional Distress

To establish intentional infliction of emotional distress (IIED), Defendants must plead

facts showing:

(1) Plaintiff intentionally or recklessly inflicted severe emotional distress or knew that distress would probably result from the conduct;

(2) Plaintiff's conduct was so extreme and outrageous that it exceeded all possible grounds of decency and was furthermore atrocious and utterly intolerable in a civilized community;

(3) the actions of the Plaintiff caused the Defendants emotional distress; and

(4) the emotional distress suffered by Defendants was so severe that no reasonable person could be expected to endure it.

*Dye v. Gainey*, 463 S.E.2d 97, 99 (S.C. Ct. App. 1995), citing *Shupe v. Settle*, S.E.2d 651 (S.C.

Ct. App. 1994)).

Defendants do not state an IIED claim because they do not plead facts showing that

Plaintiff intentionally or recklessly inflicted emotional distress or that Plaintiff knew such

distress would result. Defendants state the following IIED allegations:

75. Plaintiff has accused the [Defendants] of being Human Traffickers and communicated same to others who work with and are associated with Defendants.

76. The conduct of the plaintiff in accusing the defendants of such a behavior that is abhorred across the world is atrocious and utterly intolerable.

77. Plaintiff's conduct, action, and the allegations accusing the defendants of heinous crime has caused and created a situation that no reasonable person should and can be expected to endure and/or tolerate.

78. The actions of the plaintiff have caused the defendants sleepless nights and severe emotional distress.

(Ex. B at ¶¶ 75-78).    Nowhere in these allegations do Defendants allege the Plaintiff intentionally, recklessly or knowingly caused severe emotional distress.

To the extent that Defendants rely on other allegations throughout their counterclaims that Plaintiff intentionally, maliciously or purposefully left Nimbaya, accused Defendants of human trafficking and tried to harm their reputations, such conclusory statements regarding Plaintiff's state-of-mind, unsupported by facts which would give rise to an inference that such occurred, do not suffice to state a claim. (Ex. B at ¶¶ 62-64, 72-73). "Allegations about other people's mental sates are conclusory unless they are linked to facts from which the relevant mental statement might be inferred." *Burnett v. Springfield Twp*, No. 13-1646, 2014 U.S. Dist. LEXIS 92216, *17-18 (E.D. Penn. July 8, 2014), Ex. G**.** Thus, to plead an IIED claim, Defendants must plead specific facts supporting the allegation that Plaintiff intentionally, recklessly or knowingly caused severe emotional distress. *See Anderson v. Dolgencorp*, LLC, No. 1:14cv920, 2014 U.S. Dist. LEXIS 152083, *9 (M.D. Ala. Oct. 28, 2014) ("[Plaintiff's] claim for intentional infliction of emotional distress is due to be dismissed because she fails to state with any particularity which facts support her assertion that Dolgencorp intentionally inflicted emotional distress."), Ex. H**.** *See also Burnett*, 2014 U.S. Dist. LEXIS 92216 at *33-34 ("None of the actual facts pled in [Plaintiff's] Complaint, independently or together, suggest that any defendant intentionally engaged in outrageous conduct that caused [Plaintiff's] emotional distress."). Defendants plead no such facts and rely instead on conclusory allegations that do not suffice.

Defendants' IIED claim also fails because Defendants do not allege severe emotional distress. Under South Carolina law, Defendants must show that emotional distress suffered by the complainant was so severe that "no reasonable [person] could be expected to endure it." *See*

*Argoe v. Three Rivers Behavioral Health, L.L.C.*, 710 S.E.2d 67, 74 (S.C. 2011). On this element, Defendants simply plead, "The actions of the plaintiff have caused the defendants sleepless nights and severe emotional distress." (Ex. B at ¶ 78). First, as to Defendants' conclusory allegation that Plaintiff caused them "severe emotional distress," the allegation does not suffice to state a claim. As observed by the U.S. Supreme Court, a pleading cannot merely offer labels, conclusions and a formulaic recitation of elements. *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555.

Second, as to Defendants only other allegation of emotional distress – that Plaintiff caused the Defendants sleepless nights – Defendants likewise fail to state a claim. "Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Hansson v. Scalise Builders of South Carolina*, 650 S.E.2d 68, 72 (S.C. 2007), quoting Restatement (Second) of Torts § 46 cmt. j. "Sleepless nights," without more, do not overcome this bar and rise to the level of severe emotional distress. *Id.* at 72 (finding Plaintiff's claims that he lost sleep at night insufficient to create a jury question on the damages element of his claim for intentional infliction of emotional distress).

 For these reasons, Defendants' IIED claim should be dismissed for failure to state a claim.

### C.    Defendants Do Not State a Claim for Breach of Contract

Defendants do not plead the elements for breach of contract. The elements of a breach of contract are (1) the existence of a contract, (2) its breach, and (3) damages caused by such

CHARLESTON\596673v2

breach. *South Glass & Plastics Co., v. Kemper*, 732 S.E.2d 205, 208 (S.C. Ct. App. 2012).

Defendants state the following breach of contract claim:

> 69. Prior to 2012 when plaintiff arrived in Columbia, South Carolina, with Defendant Nimbaya, plaintiff had been to numerous other tours with Defendants Nimbaya and Conde in other areas of the world.
>
> 70. Plaintiff was aware that prior to leaving Guinea for any of these tours, Defendants Conde and Nimbaya! would book the tours and events for each location and the dates would have been set.
>
> 71. In 2012 when Plaintiff and others arrived in Columbia, South Carolina, plaintiff was aware that Defendants Nimbaya! and Conde had booked numerous performances in the United States and Canada.
>
> 72. Plaintiff was also aware that the Defendants Nimbaya! and Defendant Conde had agreed to be part of the movie Amazing Grace and that agreement had been entered into. As a result of plaintiff's decision to flee and abandon the group, the rest of the other performers followed suit which resulted in Defendants Nimbaya! and Conde losing contracts and business reputation.
>
> 73. Plaintiff's intentional and malicious actions were in breach of the agreement made when the group left Guinea for the United States …

(Ex. B at ¶¶ 70-73)

Nowhere in these allegations do Defendants plead terms of a contract (and facts demonstrating their formation) that Plaintiff allegedly breached. Defendants generally allege Plaintiff's awareness of Defendants' intent and plans, but the formation of a contract to perform requires more than awareness. "[T]here must be a meeting of the minds with regard to all essential and material terms of the agreement." *Player v. Chandler*, 382 S.E.2d 891, 893 (S.C. 1989). Defendants plead no such agreement.

Moreover, Defendants do not sufficiently plead causation. Defendants in their pleading attribute their contract damages to the intervening acts of third parties – the departure of Nimbaya group members after Plaintiff left. (Ex. B at ¶ 72). Defendants do not allege any facts from which a court could infer that Plaintiff is legally responsible for the intervening departure

of third parties from Nimbaya and the resulting harm. Defendants therefore fail to plead sufficient facts from which the court could infer that Plaintiff caused Defendants' contract damages, and the claim should be dismissed. *See Hall v. HSBC Mortg. Servs.*, 581 F. App'x 800, 802 (11th Cir. 2014) (finding in support of dismissal that Plaintiff failed to plead sufficient facts plausibly raising an inference of causation and damages stemming from Defendants' alleged breach of contract).

## **CONCLUSION**

Pursuant to Rule 12(b)(6), Plaintiff moves to dismiss the Amended Counterclaims. Defendants fail to plead plausible claims for defamation, breach of contract and intentional infliction of emotional distress. This is Defendants' second bite at the apple. In pleading their Amended Counterclaims Defendants had the benefit of Plaintiff's initial motion to dismiss, which identified a number of pleading deficiencies in the intentional infliction of emotional distress and breach of contract claims. In repleading them, Defendants failed to cure the deficiencies and added a third claim for defamation that is likewise wanting for factual support. Dismissal for failure to state a cause of action is proper.

Respectfully submitted,

Dated: February 13, 2014

/s/ ____Nakisha N. Chaney_____
Nakisha Chaney (P65066)
*admitted pro hac vice*
Attorney for Plaintiff
101 N. Main Street, Suite 555
Ann Arbor, Michigan 48104
*nchaney@nachtlaw.com*

/s/ ___Scott Schools_____
Scott N. Schools (Federal ID No. 4985)
MOORE & VAN ALLEN
Attorney for Plaintiff

78 Wentworth Street
Charleston, SC 29401
scottschools@mvalaw.com

13